IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TABITHA TOTAH | No. C-09-4051 MMC |
|     Plaintiff(s), | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| LUCASFILM ENTERTAINMENT COMPANY LTD., Does 1-20, | |
|     Defendant(s). | |

Before the Court is defendant Lucasfilm Entertainment Company Ltd.'s ("Lucasfilm") Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, filed October 29, 2010. Plaintiff Tabitha Totah ("Totah") has filed opposition, to which Lucasfilm has replied. The matter came on regularly for hearing on December 3, 2010. Angela Alioto of the Law Offices of Joseph L. Alioto and Angela Alioto and Jody A. Meisel of the Law Offices of Jody A. Meisel appeared on behalf of Totah; Janine S. Simerly of the Miller Law Group appeared on behalf of Lucasfilm. Having read and considered the papers filed in support of and in opposition to the motion, and having considered the arguments of counsel, the Court rules as follows.

## BACKGROUND[1]

Totah is a former Lucasfilm employee, who was terminated on March 9, 2009. At

---

[1] The facts set forth below are derived from the declarations, deposition transcripts, and exhibits submitted by the parties, and either are not in dispute or are "viewed in the light most favorable to the party opposing the motion." See Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

the time of her termination, Totah was employed as a Marketing and Special Events Coordinator, where she was supervised by Casey Collins ("Collins") and Paul Southern ("Southern"), who, in turn, reported to Howard Roffman ("Roffman"). Totah initially was hired by Collins as a temporary retail marketing project employee in September 2004; after a year, she was retained as a regular at-will employee, and thereafter was promoted by Collins in 2006 to her final position at Lucasfilm.

In that position, Totah worked with various business partners to host exhibitions of Lucasfilm artifacts from the making of the Star Wars and Indiana Jones films. This work required Totah to travel to various exhibition sites, including sites outside of the United States, and to work with various business partners local to those sites. One such partner was UAU, a Portuguese production company that contracted with Lucasfilm to facilitate Lucasfilm's international exhibitions between 2005 and 2008. In coordinating with UAU, Totah worked with José Araújo ("Araújo"), an employee of UAU. Araújo, while working with Totah during two trips to Europe in 2008, told vulgar stories in front of Totah and other Lucasfilm employees, including, on one occasion, describing a "blow job chair" (Simerly Decl. Ex. A, at 86:1-19 (Totah Dep.)), on another occasion, remarking upon the "Swedish shaved legs" of two women who ran a coffee cart (id. at 244:6-7), on "a few occasions," telling a story about Swedish teens becoming drunk by inserting tampons soaked in alcohol into their anuses (id. at 88:15-25), and, on "multiple occasions," talking about having sex with unidentified women on top of a "wild angry bear" (id. at 250:15-18, 251:17).

On May 29, 2008, one of Totah's colleagues, Joanee Honour ("Honour"), complained about Araújo to Patty Carlson, the Director of Financial Operations, who oversees Lucasfilm's Archives department; Carlson, in turn, reported Honour's complaints to Collins and Southern. In her report to Carlson, Honour complained about Araújo's comment regarding having sex on an angry wild bear.[2] Honour also complained, however,

---

[2] Although Carlson's notes of her conversation with Honour describe one of the "bear" comments as directed to Honour (see Carlson Decl. Ex. A, at 4 ("Joanee, I could make love to you on a grizzly bear")), Totah is not aware of any such remark having been

about Totah's behavior while on the trip, which Honour described as "unprofessional."  (Id. Ex. C, at 74:9-12 (Collins Dep.).)  In that regard, Honour reported that (1) Totah twice failed to show up for work due to "excessive" partying the night before (id. Ex. D, at 28:5-11 (Southern Dep.), Ex. F, at 20:11-16, 47:16-17 (Honour Dep.)); (2) Totah was an "angry drunk," who called Honour early one morning, woke her up and "screamed" at her that she was late and was needed downstairs, when Honor was not late and was only needed because Totah was drunk (id. Ex. F, at 25:11-26:7, 47:16-17; Carlson Decl. Ex. A, at 4-5), and, on another trip and again drunk, drove Honour "to tears," yelling at her for being there in place of another employee who could not go because she was breastfeeding (Simerly Decl. Ex. F, at 26:12-24, 47:16-17 (Honour Dep.); Carlson Decl. Ex. A, at 3); and (3) after a night of Totah's drinking, Honour, at the request of Araújo, had to help Totah, who was "physically" drunk, get through airport security in order to board her flight (Simerly Decl. Ex. F, at 47:16-17, 87:3-22 (Honour Dep.), Ex. E, at Ex. 4 (Wood Dep.).)

On June 9, 2008, Collins discussed with Totah the accusations against her and Araújo.  (Id. Ex. C, at 108:1-6 (Collins Dep.).)  In response to Honour's complaint that Totah was an "angry drunk', Totah stated: "[I]f I were a man, this would be handled differently." (Id. Ex. A, at 255:10-11, 255:18-22 (Totah Dep.).)  As to Araújo, Totah confirmed that he was "offensive" and "obnoxious," (id. at 247:9), but at that time was referring to Araújo's "extramarital affairs" and not to any remarks (id. at 247:9-17, 256:1-7).[3]   Later in 2008, Stacy Cheregotis ("Cheregotis"), another employee at Lucasfilm, was contacted by Don Bies ("Bies"), a former employee of Lucasfilm and current business partner, who also

---

made (see Simerly Decl. Ex. A, at 250:4-11, 252:7-18 (Totah Dep.), see also id. Ex. D, at 28:17-22 (Southern Dep.)).  Also, although Collins describes the reported comment as involving a "greased monkey" (see id. Ex. C, at 115:18-25 (Collins Dep.)), it appears that Collins is referring to the comment involving the bear (see id. Ex. A, at 250:2-23 (Totah Dep.), Ex. C, at 179:14-21 (Collins Dep.)).

[3] When asked whether she ever complained to Collins Southern, or anyone else about Araújo's "language," Totah testified she had done so "five-ish" times, (see Meisel Decl. Ex. 4, at 366:25-367:13 (Totah Dep.)), and "believe[d]" those complaints included Araújo's comments regarding acts of copulation on a wild bear (id. at 367:23-6), but could not recall whether she complained about Araújo's comment regarding the "blow-job chair" or the comment regarding Swedish teenagers (id. at 367:14-22).

3

1  complained about Totah's behavior; specifically, Bies complained that there were
2  "significant problems with [Totah]" and that he was "surprised that [Lucasfilm was] allowing
3  [Totah] to be a representative of the company because her conduct was so unprofessional
4  on the road." (See Simerly Decl. Ex. B, at 21:12-19 (Roffman Dep.).)

5  Roffman was made aware of Cheregotis's conversation with Bies and contacted
6  Bies on December 3, 2008. (Id. at 50:3-13.) Roffman assured Bies that the conversation
7  would be confidential, as Bies worked with Totah and was bidding for an exhibition contract
8  at the time. (Id. at 51:11-52:2.) Bies informed Roffman that he thought Totah was "very
9  unprofessional," that she had a "temper," that there were "fights that she had gotten into
10 with different partners," that she had only "superficial knowledge" of her business area, that
11 she "excessive[ly] part[ied] and [her] drinking was preventing her from attending events,"
12 and that she had a "reputation for sleeping around with people on the crew to the point that
13 it was a joke among people working on the exhibition." (Id. at 54:10-19.)

14 Bies further informed Roffman that three other individuals had witnessed such
15 events, namely, Nelson Hall ("Hall"), Anthony Daniels ("Daniels"), and Honour. (Id. at
16 54:24-55:3.) Roffman contacted Hall, who reported "several incidents of unprofessional
17 behavior" (id. at 56:1-2, 57:4-6), and Daniels, who reported that the "conduct that he
18 observed himself that gave him concerns about [Totah's] professionalism was the fact that
19 she didn't show up for events . . . because she was hung over from partying the night
20 before" (id. at 58:4-11). Roffman discussed the above information "in some detail" with
21 Collins and Southern, with instructions to discuss it with Totah, "give her the opportunity to
22 respond to it," and "to deliver a message to her, in no uncertain terms, that even the
23 perception of her behavior like this is unacceptable to the company." (Id. at 56:4-10.)[4]

24 On February 23, 2009, Collins and Southern met with Totah to discuss her conduct
25 as reported to Roffman, having decided in advance to "give her another chance," as they
26 were of the view that the complaints received from Bies concerned the same conduct of

---

[4] Additionally, Roffman himself had observed Totah drinking to excess one evening in 2006. (See id., Ex. B, at 19:12-24 (Roffman Dep.).)

4

which Honour previously had complained. (See id. Ex. C, at 125:2-11 (Collins Dep.), Ex. E, at Ex. 6 (Wood Dep.); Collins Decl. ¶ 13.) In response, Totah asked who had made the complaints about her. (Simerly Decl. Ex. A, at 429:20-23 (Totah Dep.).) Collins and Southern informed Totah: "This is not important. Your are not going to find out. We can't tell you, and we are just going to have to move past this." (Id. Ex. C, at 125:12-16 (Collins Dep.); accord id. Ex. A, at 430:1-7 (Totah Dep.).) Totah continued to ask who had made the allegations about her, stated she wanted to discuss the matter with Human Resources, and that she was not comfortable going on an upcoming business trip to Chile. (Id. Ex. A, at 274:16-24 (Totah Dep.).) Totah did not meet with Human Resources, she was not told who complained about her behavior, and she was told not to seek out those she thought might be responsible. (See id. Ex. A. at 274:1-19, 276:13-14, 430:1-19 (Totah Dep.), Ex. C, at 50:9-12 (Collins Dep.), Ex. D, at 42:18-19 (Southern Dep.).)

On February 26, 2009, while at the San Francisco airport on her way to Chile, Totah returned a call to Bies to discuss business matters. (Id. Ex. A, at 271:20-22 (Totah Dep.).) In the course of that phone call, Totah asked if Bies had "reported anything about [Totah] to Howard Roffman or anyone at Lucasfilm." (Totah Decl. ¶ 10.)[5] Biess responded "No." (Id.) Totah further stated that "if someone said something like that, I'm not sure if I could work with them on a project." (Simerly Decl. Ex. G, at 77:13-14 (Bies Dep.).) After Totah's call, Bies called Cheregotis, informing her about Totah's call, and, in particular, stating that Totah had made a "veiled threat." (Id. at 80:18-81:8.) Cheregotis relayed the information to Roffman, who called Bies. (Id. Ex. B, at 74:23-24 (Roffman Dep.).) Bies advised Roffman that he was upset that his confidentiality with Roffman may have been breached and that Totah had threatened him with withholding work at a time when Bies was bidding on a contract with Lucasfilm. (Id. at 76:7-13.)

On March 2, 2009, Collins called Totah, and, referring to Totah's call to Bies, told

---

[5] Lucasfilm requests the Court take judicial notice of a complaint filed by Totah against Bies in state court (see Lucasfilm Req. for Judicial Notice, Ex. B), in which Totah similarly describes her conversation with Bies. As the exhibit is essentially duplicative of the evidence already submitted, the Court has not relied on it herein.

5

her: "You are in big trouble for that phone call." (Totah Decl. ¶ 11.) Totah responded that she was "merely returning a business call" (id.) and requested a "heads up" if a decision was made to terminate her employment. (Simerly Decl. Ex. C, at 58:17-21 (Collins Dep.).) That same day, Collins and Southern, after consultation with Roffman and Human Resources, decided to terminate Totah's employment due to her previous unprofessional conduct, her questioning of Bies, and her veiled threat to stop doing business with him. (See id. Ex. B, at 18:13-23, 67:19-25 (Roffman Dep.), Ex. C, at 48:18-22, 229:9-15 (Collins Dep.), Ex. D, at 21:16-22 (Southern Dep.); Meisel Decl. Ex. 1, at 34:1-20, 36:3-5 (Southern Dep.).)

A few days later, on her return from her trip to Chile, Totah was told by Collins that she was "terminated" and that she should meet with Human Resources the following Monday. (See Totah Decl. ¶¶ 12, 13.) On March 9, 2009, Totah reported to work and met with Jannetta Wood in Human Resources, who informed Totah that she was fired for contacting Bies and asking whether he had made any allegations about her. (See id. ¶ 13.)

On the basis of her termination, as well as the above-referenced statements by Araújo and certain statements made by Collins during the course of her employment at Lucasfilm, Totah brings the instant action against Lucasfilm, asserting claims for (1) "Sexual Harassment - Hostile Work Environment (FEHA)," (2) "Sexual Harassment - Hostile Work Environment (Title VII), (3) "Sex Discrimination (FEHA)," (4) "Sex Discrimination (Title VII)," (5) "Unlawful Retaliation (FEHA)," (6) "Unlawful Retaliation (Title VII)", (7) "Failure to Prevent Discrimination, Harassment & Retaliation (FEHA)," (8) "Retaliation in Violation of Public Policy (Common Law)," and (9) "Intentional Infliction of Emotional Distress."[6]

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any

---

[6] On April 14, 2010, Totah voluntarily dismissed claims alleging discrimination based on ancestry and common law wrongful termination.

6

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." See Celotex, 477 U.S. at 324 (internal quotation and citation omitted). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

**DISCUSSION**

Lucasfilm seeks summary judgment on each of Totah's claims on the ground that Totah fails to raise a triable issue.[7] The Court addresses each of Totah's claims below.

**A.  Sexual Harassment**

Totah asserts a claim for sexual harassment under Title VII, 42 U.S.C. 2000e-2(a)(1), and for sexual harassment and failure to prevent sexual harassment under California's Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code §§ 12900, 12921,

---

[7] Additionally, Lucasfilm moves for summary judgment on Totah's state law claims on the ground such claims are barred by the federal enclave doctrine. Because the Court, as discussed infra, grants summary judgment on each of Totah's claims based on the merits, the Court does not address the applicability of the federal enclave doctrine and denies Lucasfilm's request to take judicial notice of the status of the Presidio as such (see Lucasfilm Req. for Judicial Notice, Ex. A).

1 12926, 12940, 12965, on the basis of comments by (1) Collins, her supervisor at Lucasfilm, and (2) Araújo, who is not an employee of Lucasfilm.

### 1. Collins

Under Title VII, to establish a claim for sexual harassment by an individual employed by Lucasfilm, Totah must show that she either was subjected to "quid-pro-quo harassment," i.e. that a supervisor conditioned employment benefits on sexual favors, or that she was subjected to harassment in the form of a hostile work environment. See Craig v. M&O Agencies, Inc. 496 F.3d 1047, 1054 (9th Cir. 2007) (discussing "two categories" of Title VII sexual harassment cases). The record contains no evidence of any quid-pro-quo, and, consequently, the Court addresses only the latter theory herein.

For purposes of her hostile work environment claim under Title VII, Totah must establish that (1) "she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." Little v. Windermere Relocation, Inc., 301 F.3d 958, 966 (9th Cir. 2002).[8] "[A] sexually objectionable environment must be both objectively and subjectively offensive." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). "Under the third element, to determine whether an environment is sufficiently hostile or abusive to violate Title VII, [courts] look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Little, 301 F.3d at 967. "[T]he required showing of severity or seriousness of the harassing conduct varies inversely

---

[8] California courts apply the same requirements under FEHA. See Hughes v. Paid, 46 Cal. 4th 1035, 1043-44 (2009) (identifying similarities between Title VII and FEHA; holding employee, to establish hostile work environment, must demonstrate "conduct was severe or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their sex"; noting "[t]here is no recovery for harassment that is occasional, isolated, sporadic, or trivial"); see also Trujillo v. N. Cty. Transit Dist., 63 Cal. App. 4th 280, 289 (Cal. App. Ct. 1998) (holding judgment against employer for failure to prevent harassment requires finding of harassment). Consequently, the Court's analysis under Title VII applies equally to Totah's state law claim under FEHA.

8

with the pervasiveness or frequency of the conduct." Ellison v. Brady, 924 F.2d 872, 878 (9th Cir. 1991). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher, 524 U.S. at 788 (internal quotation and citation omitted) (noting Title VII is not a "general civility code"); accord Ellison, 924 F.2d at 876 (noting, "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee is not, by itself, actionable under Title VII" (internal quotation and citation omitted)).

Here, the record, viewed in the light most favorable to Totah, establishes that Collins used in the workplace, over the course of Totah's employment at Lucasfilm and when referring to other employees who were not present at the time, the terms "gay" or "fag" a total of approximately ten times,[9] "bitch" approximately five times, and, in reference to a female employee, "ugly" twice, and that on "several occasions" he inquired about whether another employee was bisexual. (See Simerly Decl., Ex. A, at 111:15-16, 183:5-18, 185:14-18, 288:9-23 (Totah Dep.); Meisel Decl. Ex. 2, at 89:3-8, 90:20-25, 150:2-15 (Collins Dep.).) Totah was present at the time these comments were made, but they were not directed at her. (Simerly Decl. Ex. A, at 183:5-14, 185:13-18, 288:9-23 (Totah Dep.)). Rather, the only conduct on the part of Collins directed towards Totah was a single suggestion he made to her that she "could wear an Ewok costume"[10] (Meisel Decl. Ex. 2, at 153:14-154:9, 158:22-25 (Collins Dep.)). Although offended by at least some of these comments, Totah did not complain about them. (See Simerly Decl. Ex A, at 111:20-112:22 (Totah Dep); Meisel Decl. Ex. 4, at 154:4-10, 158:6-9 (Totah Dep).)[11]

---

[9] Collins denies using the word "fag." (See Meisel Decl. Ex. 2, at 149:17-18 (Collins Dep.).)

[10] The record establishes that an Ewok is a "fictional character from the film Star Wars Episode VI: Return of the Jedi," that Ewoks are "teddy-bear like creatures that inhabit the moon of Endor," and that Ewoks are not of "arab ancestry." (Simerly Decl. Ex. L, at 6:27-7:12 (Pl.'s Resp. to Def. Lucasfilm's Am. Req. for Admis.).)

[11] The Court notes, however, that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee," Faragher, 524 U.S. at 807, and, consequently, the absence of a complaint is not dispositive to the extent Totah's

9

While the above-described comments may be offensive, they are not "sufficiently severe or pervasive as to alter the conditions of [Totah's] employment and create an abusive working environment." See Little, 301 F.3d at 966. In particular, such conduct was, as to Totah, neither threatening nor humiliating, occurred irregularly, and, with the exception of the "Ewok" comment, was in reference to other individuals. See Manatt v. Bank of America, NA, 339 F.3d 792, 798-99 (9th Cir. 2003) (finding no hostile work environment where employee overheard "offhand comments" and "racially insensitive humor" by coworkers and supervisor, and where comments were directed at plaintiff on "only a couple of occasions"); Vasquez v. Cty of L.A., 349 F.3d 634, 642-43 (9th Cir. 2003) (holding six instances of racially harassing remarks directed at plaintiff over period of one year not sufficient to create hostile work environment; affirming summary judgment in favor of defendants); Kortan v. Ca. Youth Auth., 217 F.3d 1104, 1110-12 (9th Cir. 2000) (affirming summary judgment; finding no hostile work environment where supervisor referred to women as "castrating bitches," "Madonnas," or "Regina" in plaintiff's presence on several occasions and called plaintiff "Medea").[12]

Accordingly, to the extent Totah's sexual harassment claims are based on Collins's comments, Totah has failed to raise a triable issue and Lucasfilm is entitled to summary judgment.

**2. Araújo**

To establish a claim against Lucasfilm for sexual harassment based on comments

---

claim is based on Collins's comments.

[12] See also Mohamed v. Potter, No. C 05-02194 CRB, 2007 WL 3105021 (N.D. Cal. Oct. 23, 2007) (granting summary judgment where "sexually charged words were directed at others–and indeed persons of the opposite sex" (citing Conto v. Concord Hosp., Inc., 265 F.3d 79, 82 (1st Cir. 2001)); cf. Nichols v. Azteca Rest. Enters., 256 F.3d 864, 870,872-73 (9th Cir. 2001) (finding hostile work environment where male employee was called "faggot" and "fucking female whore" by co-workers and supervisors at least once a week and often several times a day); Anderson v. Reno, 190 F.3d 930, 933 (9th Cir. 1999) (finding hostile work environment where supervisor referred to employee as "office sex goddess," "sexy," and "the good little girl," humiliated employee in public by drawing pair of breasts on easel while employee was making presentation and then told assembled group "this is your training bra session," and where the employee received vulgar notes and was patted on buttocks and told she was "putting on weight down there").

10

1  by an individual not employed by Lucasfilm, such as Araújo, Totah must establish not only
2  that the comments were "severe or pervasive," Little, 301 F.3d at 966, but also that
3  Lucasfilm "either ratifie[d] or acquiesce[d] in the harassment by not taking immediate and/or
4  corrective actions when it knew or should have known of the conduct." See Folkerson v.
5  Circus Circus Enter., Inc., 107 F.3d 754, 756 (9th Cir. 1997).[13]  If such a showing is made,
6  "the reasonableness of [Lucasfilm's] remedy will depend on its ability to stop harassment by
7  the person who engaged in harassment[;] [i]n evaluating the adequacy of the remedy, the
8  court may also take into account the remedy's ability to persuade potential harassers to
9  refrain from unlawful conduct." Little, 301 F.3d at 968.

10  As discussed above, the record reflects four vulgar stories or remarks by Araújo,
11  made once to "multiple times."  None was about Totah (see Simerly Decl. Ex. A, at 86:1-19,
12  88:15-25, 244:6-7, 252:7-10 (Totah Dep.)), and at least three were made in the presence of
13  other Lucasfilm employees, including at least one male employee (see id. at 103:17-25,
14  104:14-21, 250:19-251:4).  Although, Totah was offended (see id. at 87:24-88:1, 244:4-7),
15  Araújo's comments do not rise to the level of altering the conditions of Totah's employment.
16  The comments were not severe, as they were not directed at Totah, or for that matter, at
17  anyone else, and effectively consisted of crude tales and observations.  Further, the
18  comments were not pervasive, as they were confined to two business trips, the longest of
19  which lasted two weeks.  (See id. at 87:11-20, 244:2-7.)  Under such circumstances,
20  Araújo's comments are insufficient, as a matter of law, to create a hostile work
21  environment.  See, e.g., Kortan, 217 F.3d at 1100 (finding offensive comments insufficient
22  to support hostile work environment claim where "mainly made in a flurry").

23  Lastly, even if Araújo's comments are viewed in conjunction with the comments
24  attributed to Collins, the totality of those remarks still fails to rise to the level of either

---

[13] See also Cal. Gov. Code § 12940(j)(i) (setting forth employer's responsibility for "acts of nonemployees, with respect to sexual harassment of employees" where "employer . . . knows or should have known of the conduct and fails to take immediate and appropriate corrective action").

11

severity or pervasiveness cognizable as a hostile work environment.[14]

Accordingly, to the extent Totah's sexual harassment claims are based on Araújo's comments, whether viewed separately or together with the comments made by Collins, Totah has failed to raise a triable issue and Lucasfilm is entitled to summary judgment.

### 2.     Sex Discrimination:  Disparate Treatment

Totah asserts her claims for sex discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), and claims for discrimination and failure to prevent discrimination under FEHA, Cal. Gov. Code §§ 12900, 12921, 12926, 12940, 12965, on the basis of three events:  (1) the termination of her employment, (2) the warnings she was given, and (3) her preclusion from speaking to Human Resources. (See Compl. ¶ 84.)[15]

To establish a claim for discrimination based on disparate treatment, a plaintiff, in the absence of "direct evidence of discriminatory intent," see Vasquez, 349 F.3d at 640-41,[16] must first make out a prima facie case by showing:  "(1) [she] is a member of a protected class, (2) [she] was qualified for [her] position, (3) [she] experienced an adverse employment action, and (4) similarly situated individuals outside [her] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." See Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). If the plaintiff makes such prima facie showing, the burden shifts to the defendant to articulate a "legitimate, non-discriminatory reason[] for the allegedly discriminatory conduct." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998).  If the defendant articulates "a facially nondiscriminatory reason," the burden shifts back to the plaintiff to show "the

---

[14] As Totah has failed to raise a triable issue based in whole or in part on Araújo's comments, the Court does not address herein whether the complaints, described above, were sufficient to put Lucasfilm on notice.  See Folkerson, 107 F.3d at 756.

[15] Totah submits no authority, and the Court is aware of none, suggesting a preclusion from speaking to Human Resources, standing alone, would constitute an adverse employment action.

[16] The record here contains no direct evidence of discriminatory intent on the part of Lucasfilm.

employer's reason was a pretext for discrimination." Id.[17]

Here, Totah fails to make out a prima facie case of discrimination. Although Totah, as a woman, is a member of a protected class, and although she submitted sufficient evidence to show she was qualified for her position (see Totah Decl. Ex. 1) and experienced an adverse employment action, namely her termination and, arguably, the warnings that preceded it,[18] Totah fails to submit evidence sufficient to show any similarly situated male employee was treated more favorably, nor has she shown other circumstances from which an inference of discrimination could be drawn.

First, Totah provides no evidentiary support for her assertion, made in her opposition, that a male employee either possessed or was perceived as possessing "child pornography." (See Opp. at 1:14-20.)[19] Second, Collins, the sole other employee on whom Totah relies, cannot be considered comparably situated such as to give rise to an inference of discrimination; the evidence shows only that Collins, in a self-appraisal form, described himself as having been perceived as a "party animal and one of the boys," a vague concept at best, and a perception he was actively seeking to change. (See Meisel Decl. Ex. 10, at 6.)  In any event, there is no evidence that Totah was warned or terminated for being a "party animal." Rather, the undisputed evidence is that, to the extent Totah's conduct on business trips played a part in any adverse employment action, it was her drinking to such a degree that it caused her to miss work and to be abusive to coworkers and the perception of her engaging in "inappropriate sexual activity with

---

[17] Under California law, the same burden-shifting rules are applicable to a claim under FEHA. See Johnson v. United Cerebral Palsay/Spastic Children's Found. of L.A., 173 Cal. App. 4th 740, 754-55 (2009).

[18] Although the Ninth Circuit has found a "warning letter or negative review" can constitute an adverse employment action, see Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847-48 (9th Cir. 2004), the Court is aware of no case holding an oral admonition, such as received by Totah, sufficient.

[19] Totah requests the Court take judicial notice of the Magistrate Judge's order precluding her from taking discovery as to the sexual orientation and sexual activity of said employee. (See Totah Req. for Judicial Notice Ex. A). Irrespective of whether such order is subject to judicial notice, the evidence is irrelevant and, consequently, the Court does not address it herein.

business partners." (See Simerly Decl. Ex. C, at 111:11-22 (Collins Dep.), Ex. D, at 38:13-39:5 (Southern Dep.)).[20] Totah provides no evidence of similarly situated individuals at Lucasfilm who were treated more favorably.

Moreover, even assuming, arguendo, Totah has established a prima facie case, which she has not, Lucasfilm has provided a "legitimate, non-discriminatory reason," Godwin, 150 F.3d at 1220, for any arguable distinction in the treatment of its employees, specifically, Totah's contacting Bies, asking him whether he had complained about her, in direct contravention of an express directive, and, further, making a "veiled threat" in the course of that conversation (see Simerly Decl. Ex. B, at 67:19-25 (Roffman Dep.), Ex. C, at 229:9-15 (Collins Dep.), Ex. G, at 81:1-8 (Bies Dep.); Meisel Decl. Ex. 1, at 34:1-20, 36:3-5 (Southern Dep.)).[21] Totah identifies no evidence raising a genuine issue of material fact as to whether these proffered reasons were pretextual.

Accordingly, Lucasfilm is entitled to summary judgment on Totah's disparate treatment claim.

### 3. Retaliation

Totah asserts claims for retaliation under Title VII, 42 U.S.C. § 2000e-3(a), retaliation and failure to prevent retaliation under FEHA, Cal. Gov. Code §§ 12900, 12921, 12926, 12940, 12965, and retaliation in violation of public policy under California common law.

To make out a prima facie case of retaliation in violation of Title VII, a plaintiff must

---

[20] Totah requests the Court take judicial notice of two blog postings purportedly showing Totah's "reputation . . . with the press." (See Totah Req. for Judicial Notice 3:14-15, Ex. B.) The request is denied for the reason that such materials are not the proper subject of judicial notice and, in any event, are irrelevant.

[21] Totah requests the Court take judicial notice of a transcript of a California Employment Development Department ("EDD") administrative hearing and order issued in conjunction therewith. (See Totah Req. for Judicial Notice Ex. C, Ex. D.) Irrespective of whether such filings are subject to judicial notice, they are irrelevant as the issue in EDD proceedings differs from those presented in the instant action, the evidence presented therein was different, and, further, under California law, any finding of fact, judgment or order therein "shall not be used as evidence in any separate or subsequent action or proceeding" brought against a present or prior employer either in state or federal court. See Cal. Unemp. Ins. Code § 1960.

14

1 show "(1) involvement in a protected activity, (2) an adverse employment action and (3) a
2 casual link between the two." Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir.
3 2000). "Thereafter, the burden of production shifts to the employer to present legitimate
4 reasons for the adverse action." Id. "Once the employer carries this burden, [the] plaintiff
5 must demonstrate a genuine issue of material fact as to whether the reason advanced by
6 the employer was a pretext." Id.[22]

7 Here, Totah identifies as protected activity the following complaints about sexual
8 harassment and disparate treatment: (1) her complaint, "five-ish" times, about Araújo's
9 language (see Meisel Decl. Ex. 4, at 366:25-367:13 (Totah Dep.)), and (2) her complaint in
10 response to Honour's description of her as an angry drunk, that "if [she] were a man, this
11 would be handled differently" (id. 255:4-22).[23] Totah identifies no evidence, however, and
12 the record reflects none, demonstrating the requisite causal link between those events and
13 any warning or her termination.

14 First, the record contains no evidence as to the time period in which Totah's
15 complaints about Araújo's language were made; Totah, as discussed above, has only
16 limited recollection thereof, and no other witness recalls any such complaint(s) having been
17 made. Consequently, no causal link may be inferred from the timing of any of those
18 complaints. Cf. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002)

---

[22] Under California law, the same burden-shifting rules are applicable. See Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005). To the extent California law differs, such difference pertains to the type of action cognizable as an "adverse employment action." Compare Brooks, 229 F.3d at 928 (holding "negative performance review" actionable under Title VII) with Akers v. Cty. of San Diego, 95 Cal. App. 4th 1441, 1457 (Cal. App. Ct. 2002) (requiring more than "mere oral or written criticism of an employee" to show adverse employment action under FEHA).

[23] At the December 3, 2010 hearing on the instant motion, Totah's counsel asserted as a third protected activity Totah's request to meet with Human Resources on February 23, 2009, on the theory such request was, in effect, a complaint that she was being discriminated against as a woman. The record reflects, however, that Totah sought to meet with Human Resources only because she "wanted to know . . . more about what exactly [the] allegations were" (see Simerly Decl. Ex. A, 274:3-6 (Totah Dep.), Ex. E, at 92:17-20 (Wood Dep.)), and contains no evidence showing Totah, by such request, intended to complain about disparate treatment by Lucasfilm, let alone evidence that she expressed to Collins and Southern, whether directly or impliedly, any such complaint.

1 (noting "causation can be inferred from timing alone where an adverse employment action
2 follows on the heels of protected activity"). Totah submits no other evidence, either direct
3 or circumstantial, to support such an inference. Second, Totah's complaint of disparate
4 treatment was made (a) at the time Collins first discussed Totah's unprofessional behavior
5 with her, and thus could not have motivated that warning, and (b) almost nine months
6 before the second warning and eventual termination, a lapse of time too long to give rise to
7 an inference of causation. See id. (citing cases finding lapses of four, five, and eight
8 months between protected activity and adverse employment action too long to give rise to
9 inference of causation). Again, Totah submits no other evidence to support a causal
10 connection.

11 Finally, even assuming Totah has made out a prima facie case of retaliation,
12 Lucasfilm, as discussed above, has articulated legitimate reasons for both the warnings
13 Totah received as well as for her termination, and Totah has failed to raise a genuine issue
14 of material fact as to pretext.

15 Accordingly, Lucasfilm is entitled to summary judgment on Totah's retaliation claims.

16 **4. Intentional Infliction of Emotional Distress**

17 To establish a claim for intentional infliction of emotional distress ("IIED"), a plaintiff
18 must have evidence demonstrating "(1) extreme and outrageous conduct by the defendant
19 with the intention of causing, or reckless disregard of the probability of causing, emotional
20 distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual
21 and proximate causation of the emotional distress by the defendant's outrageous conduct."
22 Hughes, 46 Cal. 4th at 1050. "A defendant's conduct is 'outrageous' when it is so extreme
23 as to exceed all bounds of that usually tolerated in a civilized community." Id. at 1050-51
24 (internal quotation and citation omitted). "Severe emotional distress means emotional
25 distress of such substantial quality or enduring quality that no reasonable person in civilized
26 society should be expected to endure it." Id. at 1051 (internal quotation and citation
27 omitted).

28 Here, as discussed, Totah has failed to raise a triable issue on her harassment,

disparate treatment, and retaliation claims, which are the claims on which Totah's IIED claim is based. Further, as noted, Totah has dismissed her wrongful termination claims, and, in any event, such claims would not suffice to support a claim for IIED. See <u>Buscemi v. McDonnel Douglas Corp.</u>, 736 F.2d 1348, 1352 (9th Cir. 1984) (applying California law; holding wrongful termination insufficient, as a matter of law, to support IIED claim; noting "[e]very employee who believes he has a legitimate grievance will doubtless have some emotional anguish occasioned by his belief that he as been wronged").

There is no other evidence that Lucasfilm's behavior, or that of any of its employees or contractors or partners, was so "extreme or outrageous" as to "exceed all bounds of that usually tolerated in a civilized community." See <u>Hughes</u>, 46 Cal. 4th at 1050-51.

Accordingly, Totah has failed to raise a triable issue on her claim for intentional infliction of emotional distress, and Lucasfilm is entitled to summary judgment.

## CONCLUSION

For the reasons stated above, Lucasfilm's motion for summary judgment is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: December 16, 2010

MAXINE M. CHESNEY
United States District Judge